**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| LINDA H., | No. CV 19-4321-PLA |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Linda H.[1] ("plaintiff") filed this action on May 17, 2019, seeking review of the Commissioner's[2] denial of her applications for a period of disability and Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI") payments. The parties filed

---

[1] In the interest of protecting plaintiff's privacy, this Report and Recommendation uses plaintiff's (1) first name and last initial, and (2) year of birth in lieu of a complete birth date. See Fed. R. Civ. P. 5.2(c)(2)(B), Local Rule 5.2-1.

[2] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul, the newly-appointed Commissioner of the Social Security Administration, is hereby substituted as the defendant herein.

Consents to proceed before a Magistrate Judge on June 11, 2019, and February 28, 2020. Pursuant to the Court's Order, the parties filed a Joint Submission (alternatively "JS") on February 27, 2020, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Submission under submission without oral argument.

## II.

## BACKGROUND

Plaintiff was born in 1955. [Administrative Record ("AR") at 183, 187.] She has past relevant work experience as a sales associate, and as a caregiver. [Id. at 21, 60-61.]

On June 16, 2016, plaintiff protectively filed an application for a period of disability and DIB and an application for SSI payments, alleging in both that she has been unable to work since February 20, 2015. [Id. at 15; see also id. at 183-86, 187-96.] After her applications were denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [Id. at 126-27.] A hearing was held on March 6, 2018, at which time plaintiff appeared represented by an attorney, and testified on her own behalf. [Id. at 27-70.] A vocational expert ("VE") also testified. [Id. at 60-69.] On June 5, 2018, the ALJ issued a decision concluding that plaintiff was not under a disability from February 20, 2015, the alleged onset date, through June 5, 2018, the date of the decision. [Id. at 15-22.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [Id. at 179-80.] When the Appeals Council denied plaintiff's request for review on April 9, 2019 [id. at 1-5], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622

F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence . . . is 'more than a mere scintilla[,]' . . . [which] means -- and means only -- 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citations omitted); Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Revels, 874 F.3d at 654 (internal quotation marks and citation omitted). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Id. (internal quotation marks and citation omitted); see also SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct. 454, 87 L. Ed. 626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

## IV.

## **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting 42 U.S.C. § 423(d)(1)(A)).

**A.    THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006) (citing Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Lounsburry, 468 F.3d at 1114. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, either (1) by the testimony of a VE, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2. Lounsburry, 468 F.3d at 1114. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 721, 828 n.5 (9th Cir. 1995); Drouin, 966 F.2d at 1257.

**B.     THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since

February 20, 2015, the alleged onset date.[3] [AR at 18.] At step two, the ALJ concluded that plaintiff has the severe impairments of chronic heart failure; chronic obstructive pulmonary disease; morbid obesity; sleep apnea requiring CPAP; thyroid disease; kidney disease; and bone problems with arthritis in left foot. [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. [Id.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[4] to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c),[5] as follows:

> She is able to lift and/or carry 50 pounds occasionally and 25 pounds frequently, stand and/or walk 6 hours in an 8-hour workday and sit 6 hours in an 8-hour workday. She can never climb ladders, ropes or scaffolds. She can frequently but not constantly kneel, crouch, and stoop. She can perform all other postural activities occasionally.

[Id.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is able to perform her past relevant work as a sales associate. [Id. at 21.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of February 20, 2015, through June 5, 2018, the date of the decision. [Id. at 22.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred when he: (1) formulated plaintiff's RFC and failed to include specific RFC limitations in his hypothetical to the VE, thus rendering the testimony of the

---

[3] The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through June 30, 2018. [AR at 17.]

[4] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[5] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. §§ 404.1567(c), 416.967(c).

5

VE as invalid evidence upon which to base a step four finding; (2) assessed and rejected the opinions of plaintiff's treating physician Sunita A. Sujanani, M.D.; and (3) rejected plaintiff's subjective symptom testimony. [JS at 2.] As set forth below, the Court agrees with plaintiff, in part, and remands for further proceedings.

**A.  STEP FOUR DETERMINATION**

At step four, based on the VE's testimony, the ALJ found the following:

> [Plaintiff] is capable of performing past relevant work as a Sales associate [DOT No.] 279.357-054, light, semi-skilled SVP3, performed at medium. This work as generally done does not require the performance of work-related activities precluded by [plaintiff's] residual functional capacity. [Plaintiff] had to lift up to forty pounds. [She] testified she occasionally had to climb ladders in the stock room. Vocational expert Sharon Spaventa testified [plaintiff] actually performed the job at the medium exertional level. [S]he would be able to perform the job as generally done, but because of occasional climbing of ladders, could not perform the job as she actually performed it.
>
> In comparing [plaintiff's] residual functional capacity with the physical and mental demands of this work, I find that [plaintiff] is able to perform it as generally performed.

[AR at 21.]

Plaintiff argues that the ALJ's step four finding "is potentially the 'controlling issue' in the case at bar, because had the ALJ found that plaintiff could not perform her past work and proceeded to the step five analysis, . . . if plaintiff was limited to light work, Rule 202.02 of the Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt.P, app. 2 [the 'Grids'], would direct a finding that plaintiff is disabled if she has no transferable skills." [JS at 4 (citations omitted).] This fact was acknowledged by the ALJ at the hearing. [AR at 68-69.] Plaintiff submits that the ALJ "must be held to a strict standard to ensure that the step four finding was correct. It was not." [JS at 4.]

**1.  Hypothetical to the VE**

In his RFC determination, the ALJ found in relevant part that plaintiff is able to "stand and/or walk 6 hours in an 8-hour workday and sit 6 hours in an 8-hour workday." [AR at 18.] In his hypothetical to the VE, however, the ALJ did not include these stand/walk or sit limitations.

Instead, he asked the VE to assume "a person of like age [62 at the time of the hearing], education [11th grade], and past relevant work [sales associate and caregiver], medium [level work], never ladders, ropes, scaffolds. Frequently, but not constantly kneeling, crouching, and stooping; occasionally all o[th]er postural limitations." [Id. at 61.] The VE testified that such an individual could still perform the occupation of sales associate as generally performed, which is classified by the DOT at the light level, but which was performed by plaintiff at the medium level. [Id. at 61, 63.] Plaintiff's counsel asked the VE whether an individual who needed to elevate her legs 30 degrees with prolonged sitting for thirty minutes would be able to perform plaintiff's past relevant work as a sales associate at the medium level, and the VE testified as follows:

> [ATTY]: . . . She would need -- if she was sitting, prolonged sitting, she'd need to elevate her legs 30 degrees while sitting.
>
> ALJ: How often, and for how long?
>
> ATTY: Thirty minutes, for 30 minutes.
>
> ALJ: Thirty minutes in eight hours?
>
> ATTY: Yes.
>
> VE: Thirty -- so could she not do it under the desk on a stool, or something, if she was working -- are you talking about a sedentary job?
>
> ATTY: I'm just overlaying it with His Honor's hypothetical.
>
> ALJ: He's saying assume hypo one, but, now this.
>
> ATTY: Yes, he has medium, so that's two hours [of sitting].
>
> VE: She's not going to be sitting at all in that job, so, no, she could not accommodate that restriction.
>
> ATTY: Okay. I would think medium they usually allow up to two hours of sitting, no?
>
> VE: Not the most medium jobs . . . No.
>
> ATTY: Most medium jobs you're on your feet eight hours a day.
>
> ALJ: Unless you're on break, yeah.
>
> VE: Yes.
>
> [ATTY]: So if she did have to sit and elevate her legs for 30 minutes at at time, that would eliminate medium work though.

[VE]: In my opinion, yes.

[Id. at 65-66.]

Plaintiff argues that based on the full reading of the VE's testimony, the ALJ's failure to include the stand/walk limitation in the hypothetical to the VE "is prejudicial error." [JS at 5.] Plaintiff bases this argument on the fact that the VE stated that plaintiff "was 'not going to be sitting at all' in the sales associate job and clarified during the hearing that in 'most medium jobs you're on your feet eight hours a day,' after which the ALJ added 'Unless you're on break, yeah.'" [Id. (citing AR at 66).] Based on the VE's statement, plaintiff asserts that the VE understood a limitation to medium work "to mean that a [hypothetical] person could stand/walk for an entire 8-hour workday" and, if the six-hour standing/walking limitation had been included in the hypothetical to the VE, the VE would *not* have testified that plaintiff could perform her past work as generally performed and the claim would have proceeded to step five. [Id. at 5-6.] Plaintiff asserts that because there is no evidence that the ALJ and the VE "had a common understanding of the limitations contained in the hypothetical question," there was no "meeting of the minds on this issue, [and] it cannot be found that substantial evidence supports the RFC finding or that the V.E.'s testimony is valid evidence upon which to support the step-four finding." [Id. at 6.]

Defendant responds that since 1983 when Social Security Ruling ("SSR")[6] 83-10 was published, "ALJs and vocational experts have understood medium work as requiring the ability to stand or walk for up to six hours" and, therefore, "the limitation to medium work fully accommodated Plaintiff's past relevant work, both as she actually performed it (i.e., at the medium exertion level) and as it is generally performed in the economy (i.e., at the light exertion level, light work having the same standing and walking requirements as medium work)." [Id. at 30[7] (citing

---

[6] "SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

[7] Because the Commissioner's portion of the Joint Submission was inserted after all of plaintiff's portion, for ease of reference the Court refers to the ECF-generated page numbers when
(continued...)

SSR 83-10, 1983 SSR LEXIS 30).] Defendant suggests there is no cause for remand because the ALJ's reference to medium work thereby included a six-hour limitation on standing and/or walking, and "he did not pose an incomplete hypothetical question to the expert, notwithstanding her off-the-cuff response to counsel's subsequent positing of an additional limitation, i.e., that Plaintiff, when sitting, would 'need to elevate her legs for 30 minutes at a degree of 30 degrees.'" [Id. (citing Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005)).]

Plaintiff responds that the Commissioner's "unsupported and general" assertion that ALJs and VEs all understand that medium work requires the ability to stand or walk for up to six hours is of no matter in this case, because "it only matters what the actual V.E. in the case at bar understood." [Id. at 12.] She notes that despite hearing the VE's testimony, the ALJ failed to clarify with the VE "that medium work as described in SSR 83-10 limits standing and walking to 6 hours in order to make sure that she understood the specific standing and walking limitations he meant when posing a hypothetical limiting plaintiff to 'medium' work" -- standing and walking limitations that the ALJ included in his RFC. [Id. (citing AR at 18).] Plaintiff asserts that because the VE testified that plaintiff could perform her past work "both as actually and generally performed [but for the lifting], the V.E. clearly understood that the hypothetical limitation to 'medium' work meant that [plaintiff] had the ability to stand and walk for all 8 hours of the workday." [Id. at 12-13.] Because that "understanding" is inconsistent with the ALJ's actual RFC finding, the VE's testimony "is not valid evidence upon which to base the step four finding."

The Court generally agrees with plaintiff. SSR 83-10 provides that light work "requires a *good deal* of walking or standing," and that "[s]itting *may* occur *intermittently* during the remaining time." SSR 83-10, 1983 WL 31251, at *5-6 (emphases added). That Ruling also notes that "[s]ince frequent [i.e., occurring from one-third to two-thirds of the time] lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of *approximately* 6 hours of an 8-hour workday." Id. at *6 (emphasis

---

[7](...continued)
citing to defendant's arguments.

added). Similarly, with respect to medium work, SSR 83-10 provides that "[a] full range of medium work requires standing or walking, off and on, for a total of *approximately* 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds." Id. (emphasis added). Thus, SSR 83-10 does not specifically state that standing/walking occurs *only* six hours of an eight-hour workday, but instead that light and medium work require at least that amount of standing/walking in order to accommodate the lifting and carrying aspects of light or medium work. Indeed, it was the opinion of the VE in this case that standing/walking would occur virtually constantly in the sales associate position. [AR at 66.]

In his RFC determination, the ALJ *specifically* included a six-hour walking/standing limitation. Yet, no such limitation was included in the hypothetical to the VE, even after the VE clearly stated her expert opinion that there is no sitting *at all* in a sales associate job[8] -- an opinion with which the ALJ appears to have agreed. [See, e.g., id. (hearing transcript reflects that the ALJ stated that "working in a store she's not sitting, that's correct").] The Ninth Circuit has recently found that where a hypothetical to a VE does not accurately reflect the RFC, the VE's opinion about jobs in response to the hypothetical question does not constitute substantial evidence to support the ALJ's findings. Simpson v. Berryhill, 717 F. App'x 670, 673 (9th Cir. 2017) (unpublished). Such is the case here, and the error was not harmless because the "ALJ did not adequately develop the record on this issue." Id. That is, he did not inquire -- even after the VE voiced her expert opinion that there would be no sitting "at all" in the sales associate position -- as to whether that position could be performed by someone who was limited to standing and/or walking six hours in an eight-hour workday.

Remand is warranted on this issue.

/

/

---

[8] The VE previously had testified that the only factor that influenced her decision that plaintiff had "actually performed" the sales associate position at the medium and not the light level was "due to lifting" more than 20 pounds. [AR at 61, 65.] The VE later testified that because plaintiff occasionally had to climb ladders in her past work as a sales associate, she could not perform that job as she previously performed it, but only as generally performed in the economy. [Id. at 62-64.]

|   |   |
|---|---|
| 1 | **2. Failure to Include All Exertional and Non-exertional Limitations in RFC** |

Plaintiff also complains that the ALJ failed to include all exertional and non-exertional limitations that derive from her severe and non-severe impairments in his RFC determination. Specifically, she notes that medical records clearly show the following: (1) she has calcaneal bone spurring with pain, necessitating orthotic shoes and compression stockings; (2) she is morbidly obese, at times with hyperventilation syndrome and, even after losing 20 pounds, on October 13, 2017, she weighed 117 kg (approximately 258 pounds) [AR at 530]; (3) her "constant weight gain" was noted to be caused by "excessive fluid due to her congestive heart failure" [id. at 406]; (4) her congestive heart failure was treated and documented throughout the record; (5) her related swelling/edema is also consistently documented in the record; and (6) she has developed moderate renal insufficiency from the use of her medications, which cause her to urinate at least six times per hour. [JS at 8-9 (citations omitted).] Plaintiff notes that although the ALJ professed to assess the impact of plaintiff's morbid obesity on her functioning, he did so only using boilerplate language and "no reasonable review of the complete medical record cited above supports a finding that plaintiff has the RFC to sustain the demands of medium work when considering the impact of her morbid obesity on her other physical impairments." [Id. at 9 (citing AR at 18).] She notes that "[a] person such as plaintiff who has congestive heart failure, is morbidly obese with 'moderate to advanced osteoarthritic changes' in her left foot, and requires orthotic shoes and compression stockings . . . cannot reasonably be expected to stand and walk a total of 6 hours per workday while lifting/carrying 25 pounds up to two-thirds of an 8-hour day (approximately 5.3 hours) and 25 pounds up to one-third of an 8-hour workday (approximately 2.6 hours), [and] while bending and stooping up to 5.3 hours per workday." [Id. at 10.] Plaintiff also notes a 2018 report by her treating physician, Dr. Sujanani, who opined that plaintiff's pain and other symptoms are severe enough to occasionally interfere with the attention and concentration needed to perform even simple work tasks; she could sit and stand for 30 minutes each at one time; she could sit and stand/walk less than 2 hours each in an 8-hour workday; she would need to elevate her legs 30% of a workday with prolonged sitting; she can occasionally lift 10 pounds but not more; and she would likely miss more than 4 days per month due to her impairments or

her treatment. [Id. at 10-11 (citing AR at 577-81); see also AR at 570-76 (2017 report by Dr. Sujanani).]

Defendant responds to these arguments stating that plaintiff's "alternative interpretation of the record evidence does not refute the ALJ's" interpretation. [Id. at 31.] He generally states, without further explanation, that the ALJ found plaintiff's obesity "to be a severe impairment and limited Plaintiff accordingly." [Id.] Defendant also notes that the ALJ found Dr. Sujanani's opinion and limitations to be inconsistent with her own treatment records, "which essentially told the story that, when Plaintiff's other problems were treated, her primary problems withered away." [Id. (citing AR at 20, 539, 577-83).]

The Court notes that other than summarily stating that his RFC assessment "reflects the degree of limitation I have found with consideration of [plaintiff's] obesity" [AR at 18], the ALJ did not otherwise explain how his RFC determination reflects those purported findings. Indeed, although he precluded plaintiff from climbing ladders, ropes, and scaffolds (which might have been due in whole or in part to the fact that she complains of frequent dizziness, or that she suffers from issues due to osteoarthritic changes and tendon tears in her left ankle), the ALJ also determined that plaintiff could lift and carry 25 pounds frequently, i.e., between one-third and two-thirds of a workday, and 50 pounds occasionally, i.e., up to one-third of a workday, can "frequently [i.e., between one-third and two-thirds of a workday] but not constantly kneel, crouch, and stoop," and can occasionally perform "all other postural activities." [Id.]

Because the case is being remanded for the ALJ to provide a complete hypothetical to the VE, the ALJ, on remand, shall also reassess the medical evidence of record, including but not limited to Dr. Sujanani's opinion(s) and plaintiff's morbid obesity.

**B. OTHER ISSUES**

Plaintiff also complains that the ALJ improperly rejected plaintiff's subjective symptom testimony. [Id. at 2.] Because the case is being remanded as the ALJ failed to provide a complete hypothetical to the VE, and the medical records and plaintiff's subjective symptom testimony will need to be revisited on remand, the Court will not further address this issue herein.

## VI.

## **REMAND FOR FURTHER PROCEEDINGS**

The Court has discretion to remand or reverse and award benefits. Trevizo v. Berryhill, 871 F.3d 664, 682 (9th Cir. 2017) (citation omitted). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. (citing Garrison, 759 F.3d at 1019). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Garrison, 759 F.3d at 1021.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, the ALJ on remand shall reassess the medical opinions of record, including Dr. Sujanani's opinions, and explain the weight afforded to each opinion and provide legally adequate reasons for any portion of an opinion that the ALJ discounts or rejects. Second, in accordance with SSR 16-3p, the ALJ on remand shall reassess plaintiff's subjective allegations and either credit her testimony as true, or provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting or rejecting any testimony. Finally, if warranted, the ALJ shall reassess plaintiff's RFC and determine at step four -- with the assistance of a VE and utilizing a *complete* hypothetical -- whether plaintiff is capable of performing her past relevant work as a sales associate as generally performed in the economy.[9] If plaintiff is not so capable, or if the ALJ determines to make an alternative finding at step five, then the ALJ shall proceed to step five and determine, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the regional and national economy that plaintiff can still perform.

---

[9] Nothing herein is intended to disrupt the ALJ's implicit step four finding that plaintiff is unable to perform her past relevant work as a caregiver, or that she is unable to perform the sales associate position as she actually performed it. [See AR at 21.]

## VII.

## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: March 16, 2020

*Paul L. Abrams*
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE